**PHILIPP BROTHERS, INC., Plaintiff,**

**v.**

**The UNITED STATES, Defendant.**

**Court No. 84–4–00528.**

United States Court of
International Trade.

Oct. 22, 1986.

See also 640 F.Supp. 261.

---

Donohue and Donohue (James A. Geraghty), New York City, for plaintiff.

Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, and Elizabeth C. Seastrum, Civil Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## OPINION

RESTANI, Judge:

■ This is a challenge to an annual review determination of the International Trade Administration of the Department of Commerce ("Commerce") regarding countervailing duties on exports of Brazilian pig iron. On February 14, 1986, this court remanded this matter to Commerce for reconsideration of two findings. *Philipp Bros., Inc. v. United States*, 10 CIT ——, 630 F.Supp. 1317 (1986), *appeal dismissed*, No. 86–1122 (Fed.Cir. July 18, 1986). First, the court found that there was no adequate explanation for the use of a country-wide methodology in calculating additional duties based on subsidies, given the availability and previous use of company specific data demonstrating substantial differences in the subsidies provided various companies. *Id.* at 1322–23. The court la-

ter made clear that reconsideration of the methodology utilized was required.

On remand, Commerce determined that in calculating a country-wide subsidy rate it would not include data on subsidies provided one particular producer, inasmuch as such subsidies materially varied in amount from those provided other relevant producers. Plaintiff does not challenge this result and the court will not address it further.

■ Second, the court directed Commerce to clarify whether it treated failure to timely collect a tax to offset an export credit subsidy as a separate countervailable subsidy. Commerce has clarified that this is not a separate subsidy, rather the delay is considered in calculating the value of the credit subsidy. The treatment of the tax offset will be reviewed on this basis.

The record before the court indicates the following. Producers of pig iron qualify for the Brazilian government's export credit upon shipment. Actual payment of this credit does not occur at a fixed time thereafter, due to delays in making application for the subsidy and administrative variables. Normally, payment would occur, however, within two to three months of shipment. Following negotiations with the United States, the Brazilian government agreed that the export credit would be offset by a tax to be levied on the concerned producers. The United States was advised that collection of the tax would occur in mid–1981.[1] Collection actually began on December 31, 1982. Commerce indicates that, in conformity with the terms of a suspension agreement regarding tool steel from Brazil, it would have considered the credit fully offset, if a tax in the same amount were paid within forty-five days of shipment. Inasmuch as the taxes were not paid within forty-five days of any 1981 shipment, the amount of the tax offset was reduced by an amount equivalent to the value of an interest-free loan made forty-five days after shipment.

---

1. The year under review was 1981. The reference in the court's earlier opinion to 1980 was inadvertent. *Philipp Bros., Inc. v. United States*, 630 F.Supp. at 1319.

Plaintiff argues that this methodology is unreasonable, arbitrary and capricious because the credit is accounted for upon accrual, that is, the date of shipment. To be consistent, plaintiff argues, the tax offset must also be accounted for upon accrual, presumably, the date of shipment.[2] Such procedure would result in a total offset. Plaintiff is correct on one point. Symmetry in accounting for credits and their corresponding offsets is desirable, but the issue here is whether this apparent lack of symmetry renders Commerce's procedures unlawful.

One approach to this issue is to examine how plaintiff's proposed methodology relates to reality. Under plaintiff's view the credit and offset would be accounted for upon shipment, thus eliminating any calculation for delay in payment. Here only the credit possibly was paid within a relatively short time of shipment. The tax certainly was not paid any earlier than one year from the time of shipment. Thus, there is no real symmetry in plaintiff's proposed methodology, it is merely a way of ignoring the delay.[3]

Presumably, producers price with a view to credits they know will be received. Reasonable producers also price with a view to taxes which will not be collected or which will be collected at some far-off time. In this case, the implementing administrative decree by the Brazilian government set no time for the payment of the offset tax, a likely signal that some delay in collection would occur. Therefore, accounting for the delay probably serves the goals of the countervailing laws. That is, although subsidies need not be directly related to prices, subsidization tends to allow lower prices, a situation Congress attempts to remedy through the imposition of additional duties. Most importantly, however, there was nothing unlawful or unfair to plaintiff about the methodology chosen by Commerce. Given the facts available to Commerce it was reasonable, both in terms of countervailing law generally, and with regard to plaintiff in particular.

Commerce's determination on remand is upheld.

---

2. It is not entirely clear from the record when a tax accrues under Brazilian law.

3. Plaintiff indicates that it does not seek a cash basis accounting because the record does not contain the necessary information.